UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
ROBERT BISHOP, EDUARD OPRESCU, :
VICTOR SHIMMONS, RAY ANNIS, :
JACKY DEUS, FRANCIS MILLER, JOSEPH : 04 Civ. 10074 (CSH)
INGEGNERE, GARY MILLER, GEORGE :
KYRIAKIDES, PAUL UNRATH and :
JOHN O'HARA, :
 :
              Plaintiffs, :
 :
  -against- :
 :
 : MEMORANDUM
HOTEL and ALLIED SERVICES UNION LOCAL : OPINION AND ORDER
758, NEW YORK HOTEL and MOTEL TRADES :
COUNCIL, and NEW YORK PALACE HOTEL, :
 :
             Defendants. :
--------------------------------------------------------------- x

HAIGHT, Senior District Judge:

      Plaintiffs are employees of the New York Palace Hotel (the "Hotel") and members of Hotel and Allied Services Union Local 758, a constituent local of the New York Hotel and Motel Trades Council (collectively, the "Union"). Plaintiffs' complaint, brought pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, alleged that the Hotel harmed the plaintiffs by breaching a collective bargaining agreement with the Union, and that the Union breached its duty of fair representation of plaintiffs by failing to press a grievance on their behalf. Subsequent to the filing of this suit, the Union filed a formal grievance and pursued arbitration on behalf of the plaintiffs against the Hotel, and the Court stayed further proceedings in the litigation pending the completion of the arbitration process. On July 17, 2007, the arbitrator issued an award denying plaintiffs' grievance in its entirety. Plaintiffs, proceeding *pro se*, have filed a motion to vacate the arbitration award. The Union and the Hotel oppose that motion. In addition, the Hotel has filed a cross-motion to confirm the arbitration award and to dismiss plaintiffs' complaint.

# I. BACKGROUND

## A. Factual Overview

The plaintiffs are employed as bellmen and doormen at the Hotel and are members of the Union. The Hotel and the Union are parties to a collective bargaining agreement (the "CBA"). Plaintiffs contend that the Hotel has improperly used service standards promulgated by the American Automobile Association ("AAA") to evaluate and discipline them, in violation of the CBA.

AAA bestows ratings upon hotels based on a hotel's service, decor, and amenities. The ratings are expressed in a number of "Diamonds," with a Five Diamond rating being the highest. As part of this process, AAA promulgates and distributes to hotel managers detailed written "Standards of Service" (the "AAA Standards"), by which hotel ratings are determined. The AAA Standards detail the services bellmen and doormen are expected to render to arriving or departing guests, the information they are to furnish about the hotel and its amenities, and the questions they are to ask about needed services and the guests' satisfaction levels.

According to the Hotel, the AAA Standards were incorporated into the Hotel's own standards of service and, as early as 2000, the managers of the Hotel instructed the bellmen and doormen to comply with the standards, provided employee training with respect to the standards, and evaluated employees based on the standards.

According to plaintiffs, however, it was not until around July 2004—sometime after AAA reduced the Hotel's rating from Five Diamond to Four Diamond—that the Hotel began evaluating and disciplining doormen and bellmen based on the AAA Standards. Plaintiffs complained to the Union that the Hotel's imposition of the AAA Standards constituted a unilateral change by the employers of established work practices in violation of the CBA. Plaintiffs argued that these

standards resulted in improper disciplinary sanctions; and that adherence to the AAA standards reduced tip income because bellmen and doormen were required to spend more time with each arriving and departing guest, which reduced the number of guests they were able to service. When the Union failed to promptly file a grievance against the Hotel based on imposition of the AAA Standards upon doormen and bellmen, the plaintiffs filed the present action.

**B.    Procedural History**

On December 21, 2004, plaintiffs filed a complaint, which claimed that: (1) the Hotel breached the CBA by unilaterally altering the terms and conditions of plaintiffs' employment; (2) plaintiffs suffered damages as a result of the additional duties imposed on them; and (3) the Union breached its duty to fairly and properly represent plaintiffs when it failed to submit plaintiffs' grievance to arbitration.

On February 17, 2005, the Hotel and the Union moved to dismiss the complaint, arguing that: (1) plaintiffs had failed to exhaust the administrative remedies set forth in the CBA; (2) plaintiffs' factual allegations were insufficient to plead that the Union breached its duty of fair representation; and (3) plaintiffs failed to identify a specific provision of the CBA which was breached by the Hotel.

Plaintiffs opposed defendants' motion to dismiss and cross-moved to have the Union's attorneys, Pryor Cashman Sherman & Flynn LLP ("Pryor Cashman"), disqualified from representing the Union in this action. Plaintiffs argued that Pryor Cashman should be disqualified because: (1) there was a conflict of interest because Pryor Cashman had held itself out as counsel for the plaintiffs and was now representing interests adverse to those of the plaintiffs, and (2) Joseph Farelli, an associate at Pryor Cashman, was a key fact witness in the litigation. In an August 29, 2005 Opinion, reported at 2005 WL 2086326, the Court disqualified Pryor Cashman based on the second ground,

and declined to address the first. Because Farelli had been involved in the Union's handling of the plaintiffs' complaints—he attended an initial meeting with several plaintiffs about their complaints, and authored a memorandum to a Union director recommending that the Union file a grievance—he was a "vital fact witness" with respect to whether the Union's handling of the complaints had breached its duty of fair representation. *Id.* at *7. For this reason, the Court disqualified Farelli and Pryor Cashman from representing the Union in the litigation in this Court.

Around October 7, 2005, the Union, acting on plaintiffs' behalf, filed a formal grievance and demand for arbitration against the Hotel to contest "the [Hotel] Management's unilateral implementation of an unjust and improper disciplinary system, standards of discipline, and additional duties for Bellmen, Doorm[e]n, and Bell Captains, without negotiation with the Union and contrary to the [CBA]." Rothfield Aff., Ex. B.

In a January 4, 2006 Order, the Court stayed further proceedings in the litigation pending the completion of the arbitration process.

**C.     The Arbitration**

The arbitrator, Elliot Shriftman, conducted four days of arbitration hearings—on September 6, 2006, January 30, 2007, April 4, 2007, and May 9, 2007. The Union was represented by Farelli.[1] The Union "maintain[ed] that the Hotel unilaterally created and implemented new and additional guest service standards for Bellmen, Bell Captains, and Doormen after 2003, which allegedly are unreasonable and result in an unjust and otherwise improper disciplinary system." Rothfield Aff.,

---

[1] Plaintiffs' retained counsel at the time, Steven Coren, was also involved in the arbitration to some degree. He corresponded with Farelli about arbitration strategy and evidentiary issues. In addition, Coren is listed on the Arbitration Award as making a limited appearance as outside counsel for some of the grievants. Coren was present at three of the arbitration hearings, and consulted with Farelli and plaintiffs during those hearings.

4

Ex. E, Arbitration Award. The Hotel "contend[ed] that the standards are not 'new'" and that "in all but some minor aspects . . . they have been regularly and consistently applied to the affected employees for many years, including prior to 2003." *Id.*

The arbitrator summarized the evidence presented at the hearings:

> In support of the Union's position, several employees testified about when they believed the Hotel implemented these new and more rigorous standards; their fear that the failure to meet any one of them, such as mentioning a guest's name three times during the arrival process, will result in their discipline and ultimate termination; and, their loss of face time with guests with its attendant loss of gratuities. The Hotel's evidence was that the standards are not new and were nearly all monitored by supervisors who, from time to time, would trail Bellmen and Doormen as they performed these tasks and then would advise those employees whether they were in compliance with the five diamond standards—all as noted on evaluation forms, dating back as far as calendar year 2000. The Hotel introduced copies of evaluations in that year as well as in the years 2002 and 2003 together with disciplinary write-ups addressing those standards. The Hotel also introduced copies of the AAA's Lodging Service Evaluations Forms issued in 2001, 2002, 2003, 2004 and 2005, which contain the same or very similar performance values. The Hotel introduced documents which show that, in the relevant period, training sessions and staff meetings were conducted speaking to the same topics. Copies of wage and gratuity earnings records for many of the affected employees were introduced into the record to effectively rebut the assertions made about loss of tips.

*Id.* The arbitrator then reached the following conclusion:

> The evidence is overwhelming that the Hotel's standards have been in effect for at least seven years. The evidence is equally substantial that the Grievants failed to suffer any loss of tip income as a result of the standards or as the result of any change thereto.
>
> Thus, the [arbitrator] finds that the Union's grievance must be denied. The Hotel may move forward with enforcement of the standards in a manner consistent with the [CBA].

*Id.*

**D.     Present Motions**

Plaintiffs now move to vacate the arbitration award. Their motion, submitted in the form of a *pro se* letter, expresses dissatisfaction with both: (1) the Union's representation on behalf of the plaintiffs during the arbitration proceedings, and (2) the findings made by the arbitrator. The Union and the Hotel oppose plaintiffs' motion. In addition, the Hotel has filed a cross-motion to confirm the arbitration award and to dismiss plaintiffs' complaint.

## II.  DISCUSSION

**A.     Standing to Challenge an Arbitration Award**

"If there is no claim that the union breached its duty of fair representation, an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994). Plaintiffs were not parties to the arbitration between the Union and the Hotel. Thus, they lack standing to seek vacatur of the award unless they can establish that the Union breached its duty of fair representation during the course of the arbitration proceeding.

To breach the duty of fair representation, the union's conduct must have been "arbitrary, discriminatory or in bad faith," and must have "seriously undermine[d] the arbitral process." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003); *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989). A union's actions "are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citations and quotation marks omitted). To constitute bad faith, there must be "fraud,

6

deceitful action or dishonest conduct." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299 (1971) (quoting *Humphrey v. Moore*, 375 U.S. 335, 348 (1964)). "Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Barr*, 868 F.2d at 43.

In this case, the Union contends that Farelli expended "a tremendous amount of effort" on litigating the arbitration on behalf of the plaintiffs. Union's Opp'n Br. at 5. Farelli subpoenaed documents from the Hotel and AAA in preparation for the hearing. He coordinated multiple meetings with plaintiffs and Coren to discuss legal strategy. He conducted four days of evidentiary hearings before the arbitrator, during which he produced numerous documents, called several witnesses to testify, cross-examined the Hotel's witnesses, and presented arguments. However, plaintiffs raise several complaints as to the Union's handling of the arbitration.

First, plaintiffs note that "[c]ounsel assigned by the Union for the arbitration, Mr. Joseph Farelli, is same counsel disqualified by The Court from the Federal case," Pls.' Mot. at 1; and appear to suggest that Farelli's representation was therefore hindered by a conflict of interest. However, the Court disqualified Farelli from the litigation because he was likely to be called as a fact witness regarding the Union's initial handling of the plaintiffs' complaints. *See* 2005 WL 2086326, at *7. That possibility did not create any conflict of interest as to Farelli's representation of the plaintiffs at the grievance arbitration. Although plaintiffs' disqualification motion also alleged a conflict of interest, the Court declined to rule on that ground; and any such alleged conflict was cured when Farelli and Pryor Cashman were disqualified from representing the Union in the case before this Court. Thus, Farelli's disqualification from this litigation does not demonstrate that his

representation on behalf of the plaintiffs in the arbitration was improper.[2]

Second, plaintiffs state that the "[p]oints argued in arbitration [were] decided by the Union." Pls.' Mot. at 1. But, as a general matter, the Union was entitled to make tactical decisions in handling its members' grievances. *See Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989). That fact itself does not tend to show a breach of the duty of fair representation.

Third, plaintiffs contend that Farelli provided ineffective representation because he failed to argue at the arbitration that the grievants were entitled to "additional pay for additional duties"; instead, Farelli argued only that the application of the AAA Standards was causing "loss of tips." In general, courts will not second-guess tactical decisions made by the Union. The Second Circuit has explained:

> In hindsight, any decision a union makes in the informal yet complex process of handling its members' grievances may appear to the losing employee to have been erroneous. . . . Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach. Proof of mere negligence or errors of judgment . . . is insufficient. . . . As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage.

*Barr*, 868 F.2d at 43 (internal quotation marks and citations omitted). Thus, a tactical misjudgment, even if negligent, does not breach the duty of fair representation without evidence of bad faith or

---

[2] In fact, plaintiffs' briefs on the disqualification motion contended that a conflict of interest would exist if Pryor Cashman (and Farelli) represented the Union in this litigation because, *inter alia*, "the firm [Pryor Cashman] will again represent plaintiffs if the underlying grievance is ultimately arbitrated." Pls.' Reply Br. on Mot. to Disqualify Counsel for Union Defs., at 1, 2; 7 ("if the underlying grievance is ultimately brought to arbitration, no doubt Pryor Cashman will represent all the plaintiffs"). There was no indication that Pryor Cashman or Farelli's representation of the plaintiffs in an arbitration of the underlying grievance would itself be problematic; rather, plaintiffs treated that potential representation as a ground for disqualifying Pryor Cashman from this litigation.

8

arbitrary action.

In a declaration submitted with the Union's papers in opposition to the plaintiffs' motion to vacate the arbitration award, Farelli states: "The Plaintiffs and Coren [plaintiffs' retained counsel at the time] also agreed with my decision that the Union's claim for additional compensation for additional work had to be based on a loss of tips theory." Farelli Decl. ¶ 11. Farelli's position seems to be that the two theories—"additional pay for additional work" and "loss of tips"—were in fact one intertwined theory, which he raised during the arbitration. This explanation is somewhat puzzling, as "additional pay for additional work" and "loss of tips" appear to refer to two distinct forms of income loss caused by the Hotel's alleged imposition of additional standards: (1) that "adding on a new job requirement would be taking on additional duties," which justified additional compensation, Pls.' Mot. at 2, and (2) that those additional duties required plaintiffs to spend more time with each guest, which reduced the number of guests they could service, and thus reduced tip income. Moreover, Farelli's own correspondence with plaintiffs treats "additional pay for additional work" as a distinct argument from "loss of tips." For example, in a January 24, 2007 letter to plaintiffs' then-counsel, Farelli wrote:

> [P]lease respond to the inquiry in my January 22, 2007 letter as to whether the Grievants still desire to argue that they suffered a diminution in their tips earnings as a result of them complying with the Hotel's service standards. This argument will be in addition to the Union's argument that the Grievants are entitled to additional compensation for the additional work they performed in complying with the Hotel's service standards.

Pls.' Mot., Unmarked Ex. Given Farelli's apparent recognition in January 2007 that "additional pay for additional work" and "loss of tips" were distinct arguments, his failure to differentiate between the two in his recent affidavit—and his resulting failure to provide any rational explanation for why

9

he failed to press the separate "additional pay for additional work" argument—arguably suggests arbitrary conduct on his part.

However, even if the Farelli's conduct was "arbitrary, discriminatory or in bad faith," to establish a breach of the duty of fair representation plaintiffs must also show that such conduct "seriously undermine[d] the arbitral process." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003). In this case, plaintiffs cannot show that Farelli's failure to raise the "additional pay for additional work" argument seriously undermined the arbitral process. In essence, plaintiffs contend that additional work standards imposed by the Hotel caused two types of damages—loss of tips and loss of income due for performing additional work duties. Farelli's failure to argue the second type of damages had no effect on the result of the arbitration because the arbitrator rejected the initial contention that the Hotel had imposed additional work standards. The arbitrator found: "The evidence is overwhelming that the Hotel's standards had been in effect for at least seven years." Rothfield Aff., Ex. E, Arbitration Award. In short, the arbitrator held in the Hotel's favor on liability—and any argument Farelli had made on "additional pay for additional work" damages would not have changed that result. Thus, Farelli's failure to argue "additional pay for additional work" does not give rise to a viable claim by plaintiffs of a breach of the duty of fair representation.

Fourth, plaintiffs note that the Hotel failed to produce payroll records demonstrating that training sessions on AAA Standards had been held. Plaintiffs, as tipped employees, were required under the CBA to be paid double their hourly rate of pay for any time spent at a training session. Plaintiffs contended that the absence of double pay records would demonstrate that such training sessions never took place. However, this argument does not demonstrate any breach of the duty of fair representation on the part of the Union. Farelli issued a subpoena on March 30, 2007 to obtain

10

these payroll records, but the Hotel claimed that such records did not exist because their pay records were not broken down in a way that would show double pay. Farelli raised the issue of the Hotel's non-compliance with the subpoena at the May 9, 2007 arbitration hearing, but the arbitrator found that there was no proof that such records existed (and therefore did not find non-compliance on the part of the Hotel).[3] Thus, the absence of double pay records does not remotely indicate any breach of the duty of fair representation on the part of the Union.

Fifth, plaintiffs state: "We have reason to believe that this whole process of disciplinary action against doormen and bellmen arose from the desire on the part of the Hotel Management to find a scapegoat for the aforementioned AAA episode [referring to the Hotel's response to AAA's decision to reduce the Hotel's rating from Five Diamond to Four Diamond] and divert the attention away from the insensitive handling by the Hotel of the entire AAA Five Diamond evaluation process. . . . We believe this issue was never properly raised by the Union in the Arbitration process." Pls.' Mot. at 4. But there is no evidence that Farelli's failure to raise these issues represented anything other than good faith tactical judgments or, at most, negligence. Thus, this contention does not indicate a breach of the duty of fair representation.

For the reasons stated above, the complaints raised by the plaintiffs—even when considered in sum—do not demonstrate a breach of the duty of fair representation by the Union. Plaintiffs have not shown that Farelli's general handling of the arbitration was "arbitrary, discriminatory, or in bad faith"; and to the extent that Farelli's specific failure to raise the "additional pay for additional

---

[3] Farelli adds: "He [the arbitrator] did state, however, that if the Hotel had failed to pay double pay to the Grievants for the past training sessions, the Plaintiffs were entitled to file a separate grievance to recover such monies. The Union will process such a grievance at the request of the Plaintiffs. To date, no such request has been made by Plaintiffs." Farelli Decl. ¶ 32.

duties" argument could be considered arbitrary, that failure did not "severely undermine the arbitral process." Thus, I conclude that plaintiffs lack standing to challenge the arbitration award.

## B. Substantive Review of the Arbitration Award

Even if plaintiffs had standing to seek vacatur of the arbitration award, their complaints about the arbitrator's factual findings would not justify such relief. Courts play a distinctly limited role in reviewing the decisions of arbitrators. "An arbitration award must be upheld when the arbitrator offers even a barely colorable justification for the outcome reached." *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 526 (2d Cir. 2005) (citation and internal quotation marks omitted). The "arbitrator's award [must] draw[] its essence from the collective bargaining agreement, since the arbitrator is not free merely to dispense his own brand of industrial justice." *Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997). "But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

In this case, plaintiffs do not contend that the arbitrator failed to construe the CBA or that he acted outside the scope of his authority. Rather, they claim:

> Unfortunately we believe our testimony to have been completely disregarded by The Impartial Chairperson [the arbitrator] while complete credence given to the Hotel's position even in the face of noncompliance with some of the subpoenas and even in the face of the testimony of the Hotel's own witnesses.
>
> But the most egregious discrepancy lies with the finding by The Impartial Chairperson that: "The Hotel introduced documents which show that in the relevant period, training sessions and staff meetings were conducted speaking to the same topics." We request once more that should said bellmen and doormen Standards "training sessions" have occurred the best way to solve the issue would be for the Hotel to produce any record of double pay for such

12

said Standards "training sessions."

Pls.' Mot. at 3.[4] Plaintiffs essentially argue that the arbitrator made improper factual findings in light of the evidence at the arbitration. But "the Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." *Wallace v. Buttar,* 378 F.3d 182, 193 (2d Cir. 2004) (quotation marks and citation omitted). "A federal court may not conduct a reassessment of the evidentiary record . . . upon the principle that an arbitral award may be vacated when it runs contrary to strong evidence favoring the party bringing the motion to vacate the award." *Id.* (internal quotation marks and citation omitted). Thus, plaintiffs' complaints as to the arbitrator's fact-finding in light of the evidence cannot justify vacatur of the arbitration award.

In addition, plaintiffs assert that they believe the arbitration award to be "entirely flawed and biased," but offer no evidence of bias on the part of the arbitrator. Likewise, plaintiffs' general complaints as to the "integrity of the process" and allegations that the award is "tainted" are not sufficiently substantiated in the plaintiffs' motion papers.[5]

Thus, I conclude that plaintiffs have not presented sufficient grounds to justify vacatur of the arbitration award.

## C. The Hotel's Cross-Motions

For the reasons presented above, the Hotel's cross-motion to confirm the arbitration award is granted. In addition, the Hotel has moved to dismiss the complaint. Section 26 of the CBA states

---

[4] Plaintiffs also state that "the absence of the double pay in itself would constitute loss of income should said Standards 'training sessions' have really occurred." Pls.' Mot. at 3. However, failure to provide double pay for training sessions was not the grievance at issue in the arbitration. That issue is potentially the subject of a separate grievance.

[5] And for the reasons stated earlier, plaintiffs failed to establish that Farelli's handling of the arbitration seriously undermined the arbitral process.

that "[a]ll complaints, disputes or grievances" relating to the CBA "shall be referred to a permanent umpire known as the Impartial Chairman, and his/her decision shall be final and binding upon the parties hereto." Because plaintiffs failed to demonstrate a breach of the duty of fair representation, the arbitrator's award is final and binding. *Cf. Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567 (1976) ("The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; if it seriously undermines the integrity of the arbitral process the union's breach also removes the bar of the finality provisions of the contract."). And because the arbitrator resolved the underlying grievance raised by the plaintiffs in their complaint in this litigation, the Hotel's cross-motion to dismiss the complaint must also be granted.[6]

---

[6] In their opposition papers to the defendants' original motions to dismiss, plaintiffs raised certain allegations of retaliation by the Hotel against plaintiffs for participating in this litigation. For example, a December 5, 2005 declaration by Coren, plaintiffs' then-counsel, alleged that several plaintiffs had been subjected to discipline by the Hotel (after the litigation had commenced) and inadequately defended by the Union against those charges. Coren sought leave to amend the complaint to include those charges of retaliation.

In the January 4, 2006 Order staying the litigation pending the completion of the arbitration, the Court also stated: "Counsel for plaintiffs are granted leave to defer making a motion under Fed. R. Civ. P. 15 to amend their complaint to allege claims for retaliation until the pending arbitration has been completed and an arbitration award is at hand. . . . In these circumstances, the defendants need make no response at this time to the plaintiffs' recently voiced charges of retaliation." Accordingly, the plaintiffs' present complaint is dismissed, but without prejudice to the filing of a new complaint based on charges of retaliation, if plaintiffs wish to pursue that claim.

## III. CONCLUSION

For the reasons described above, plaintiffs' motion to vacate the arbitration award is denied.

The Hotel's cross-motions to confirm the arbitration award and dismiss the complaint are granted.

It is SO ORDERED.

Dated: New York, New York
January 14, 2008

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE